IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRAVUS MCCANTS,                )
                               )
    Plaintiff,                 )
                               )
    v.                         )       1:24CV434
                               )
CHUM HARRISON, et al.,         )
                               )
    Defendants.                )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' Motion to Dismiss. (Docket Entry 17 ("Defendants' Motion"); *see also* Docket Entry 18.) Plaintiff has filed a Response. (Docket Entry 32.) For the following reasons, the undersigned recommends that Defendants' Motion should be converted into a Motion for Summary Judgment and granted in part and denied in part.

### I. BACKGROUND

Plaintiff Travus McCants ("Plaintiff"), a prisoner proceeding *pro se*, filed his Complaint (Complaint ("Compl."), Docket Entry 1)[1] on May 23, 2024, and was subsequently permitted to proceed *in forma pauperis*. (Docket Entry 7; *see also* Docket Entry 2.) Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Eighth-Amendment rights by Defendants "CHUM Harrison" ("Harrison"), FNU Woodward ("Woodward"), FNU Nealy

---

[1] Plaintiff's Complaint contained a signed "Verification" that stated the allegations within the filing were sworn and made under penalty of perjury. (Compl. at 17.) As a result, the allegations made in Plaintiff's Complaint may serve as an affidavit and be considered as evidence for summary judgment purposes. *Jefferies v. UNC Reg'l Physicians Pediatrics*, 392 F. Supp. 3d 620, 626 (M.D.N.C. 2019) ("a verified complaint may serve as an affidavit for summary judgment purposes").

1

("Nealy"), and "five to six" additional correctional officers whose identity was unknown to Plaintiff when he filed his Complaint ("Additional Defendants").[2] (Compl. ¶¶ 5-7.) Plaintiff brings an Eighth-Amendment excessive-force claim against Woodward, Nealy, and the Additional Defendants. (*Id.* at 15;[3] *see also id.* ¶¶ 24-26.) Plaintiff also brings an Eighth-Amendment deliberate-indifference claim against Harrison. (*Id.* at 16; *see also id.* ¶¶ 27-30.) Plaintiff brings all claims against Defendants in their official and individual capacities. (*Id.* at 3; *see also id.* ¶ 8.)

Plaintiff alleges that "on or about or around March 22, 2023[,]" at Scotland Correctional Institution ("SCI"), Plaintiff encountered Harrison and "politely began to inquire about reasonable accommodations for my visual impairment." (*Id.* ¶¶ 9-10.) Plaintiff alleges that he "had been inquiring for weeks about getting the correct eyeglasses prescription to no avail and was attempting to ask [Harrison] again if he'd look into it." (*Id.* ¶ 11.) Plaintiff alleges that he "had to step a little closer to see [Harrison]" because "I am legally blind under the ADA and have difficulty reading and writing although I wear glasses." (*Id.* ¶ 10; *id.* at 2 n.1.) Plaintiff alleges that he "didn't violate any personal boundaries during that time." (*Id.* ¶ 10.) Plaintiff alleges that although he "could barely see[,]" he was able to "recognize [Harrison] from his voice" and that "Harrison appeared agitated from the tone of his voice[.]" (*Id.* ¶¶ 10, 12.)

Plaintiff next alleges that "out of nowhere, Defendant Woodward stepped in the doorway and pulled his mace on me for no reason and was aiming it at my face." (*Id.* ¶ 13.) Plaintiff alleges that Woodward "yelled at me for no reason to stating 'Stop your actions!'" (*Id.* ¶ 14.) Plaintiff

---

[2] Said officers were later identified by Defendants as Timothy Vigus, Houston Locklear, Taylor Perritt, Teonna Broady, Maria Burks, and Steve Gibson. (*See* Docket Entry 18 at 1.)

[3] All citations herein to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear in CM/ECF.

2

then alleges that Harrison stated, "Spray his ass Officer Woodward[.]" (*Id.* ¶ 15.) Plaintiff alleges that he was then sprayed in the eyes, that he "swung blindly out of human reflex and fear[,]" and that he was "completely blinded by the pepper spray." (*Id.* ¶ 16.) Plaintiff alleges that he "did not hit or assault any correctional employee." (*Id.*) Plaintiff further alleges that Wooward told him to "turn around and put your hands behind your back and face the wall." (*Id.* ¶ 17.)

Plaintiff alleges that he turned around to face the wall, that "Nealy shot [Plaintiff] in the back with a 'tazor [sic]' " and that Plaintiff "was then again sprayed with mace and simultaneously tazed [sic] again." (*Id.* ¶¶ 17-18.) Plaintiff further alleges that "I knew it was [Nealy] tazing me because I recognized his voice. The next thing I know, I'm lying face down on the ground as someone put handcuffs on me." (*Id.*) Plaintiff alleges that "there was approximately five or six officers who then rushed me down the hallway … into a shower outside of the view of any cameras and ran my face into the concrete walls repeatedly, then stood back and maced me and tazed [sic] me again." (*Id.* ¶¶ 19-20.) Plaintiff alleges that "I was in so much pain, all I could do is scream 'please stop, what did I do, y'all are killing me please I'm sorry.' " (*Id.* ¶ 21.) Plaintiff further alleges that the Additional Defendants then "started hitting me with their fists all over my head and body until I lost consciousness." (*Id.*) Plaintiff alleges injuries from the incident including bruising, "a fractured skull, a broken nose as well as both orbital bones in my eye sockets and even lost all vision for several days." (*Id.* ¶¶ 22-23.) Plaintiff also alleges that "I now suffer PTSD, nightmares, fear, depression and I am under the care of psychiatrist." (*Id.*)

In addition to the relief he seeks via his two Eighth-Amendment claims, Plaintiff seeks "a declaration that the acts and omissions described herein violated Plaintiff[']s rights under the Constitution and laws of the United States[,]" preliminary and permanent injunctions ordering

3

Defendants "to not further assault Plaintiff or any other inmate," compensatory and punitive damages "in the amount of in excess of [sic] one million dollars against each Defendant, jointly and severally[,]" "attorney's fees and the cost of this litigation[,]" a jury trial, and "any additional relief this court deems just and proper." (*Id.* at 16-17.) Plaintiff alleges that he "exhausted all available state remedies prior to filing this cause of action." (*Id.* at 17.) On December 12, 2024, Defendants filed Defendants' Motion, requesting dismissal with prejudice of "all claims against Defendants because Defendants cannot be sued in their official capacities and because Plaintiff has not stated a claim upon which relief can be granted because he did not exhaust the grievance process related to the incident set out in the Complaint." (*Id.* at 1.)

Defendants filed a Declaration of Counsel (Docket Entry 18-1) summarizing eight exhibits (Docket Entries 18-2 through 18-9) attached to their Memorandum in Support of Defendants' Motion (Docket Entry 18) containing seven of Plaintiff's fully exhausted grievances and an authentication thereof. (*See* Docket Entry 18-1 at 1-3.) On December 13, 2024, Plaintiff was sent a "*Roseboro* Letter."[4] (Docket Entry 19.) Plaintiff subsequently filed a Motion to Compel Discovery (Docket Entry 26) that he later withdrew. (Docket Entry 33.) Plaintiff also filed a Motion to Appoint Counsel (Docket Entry 27) on February 18, 2025, which was denied without prejudice. (*See* Text Order dated 2/25/2025.) On March 21, 2025, counsel entered an appearance for Plaintiff. (*See* Docket Entry 31.) On April 17, 2025, Plaintiff filed a

---

[4] A notice sent pursuant to *Roseboro v. Garrison*, 529 F.2d 309 (4th Cir. 1975) advises *pro se* plaintiffs of their right to file responses to dispositive motions filed by defendants. On two subsequent occasions, the Court mailed Plaintiff a *Roseboro* letter, both of which were returned undeliverable, apparently because Plaintiff was no longer at the updated addresses provided. (*See* Text Order dated 2/25/2025.) The Court, after receiving an updated address for Plaintiff, (*see id.*), sent a third *Roseboro* letter, which was followed by an attorney appearance on behalf of Plaintiff. (Docket Entry 30.)

Response in Opposition to Defendants' Motion. (Docket Entry 32.) The deadline for Defendants to file a Reply to said Response was May 1, 2025; Defendants have not filed a Reply.

## II. DISCUSSION

### a. Relevant Legal Standards

#### i. *Pro Se* Pleading

*Pro se* complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers in assessing their sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In the context of civil rights claims, liberal construction of a *pro se* plaintiff's pleadings and documents is especially appropriate. *Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 680 (E.D.N.C. 2013) (citing *Brown v. North Carolina Dept. of Corr.,* 612 F.3d 720, 722 (4th Cir. 2010)). This liberal construction "does not transform the court into an advocate. Only those questions which are squarely presented to the court may properly be addressed." *Weller v. Dep't of Soc. Services for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

#### ii. Rule 12(b)(6)

To consider a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") requires determining whether the complaint is legally and factually sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(6)(b), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S at 570). Plaintiffs plead plausible claims when the claims contain "factual content that allows the

5

Case 1:24-cv-00434-LCB-JLW    Document 35    Filed 06/17/25    Page 5 of 19

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

When evaluating a Rule 12(b)(6) motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff" while excluding "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Under this standard, a plaintiff must state claims articulating facts that, when accepted as true, demonstrate a plausible entitlement to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Twombly* 550 U.S at 557; *see also Iqbal*, 556 U.S. at 678).

### iii. Conversion to Summary Judgment

Although Defendants "move the Court pursuant to [Rule] 12(b)(6) to dismiss all claims against Defendants," (Docket Entry 17 at 1; *see also* Docket Entry 18 at 1), the attachments to their motion and reliance on evidence make it necessary for the Court to first determine whether said motion should be converted to a motion for summary judgment.

Defendants have submitted evidence relating to Plaintiff's use of the administrative grievance process. (*See generally* Docket Entries 18-1 to 18-9.) Specifically, Defendants attach a memorandum from Kimberly D. Grande, Executive Director of the Inmate Grievance Resolution Board ("IGRB"), which Defendant argues "authenticates and explains" seven fully exhausted grievances filed by Plaintiff through all three steps of the North Carolina Department of Adult Correction's ("NCDAC") Administrative Remedy Procedure ("ARP"). (*See* Docket Entry 18-2

6

¶ 3.) The parties dispute whether the second grievance (Docket Entry 18-4 ("March 2023 Grievance"))[5] relates to the instant action. (Docket Entry 18 at 10-12; Docket Entry 32 at 7-16.)

Defendants rely on the information from the exhibits in arguing that Plaintiff did not fully exhaust his administrative remedies regarding his Eighth-Amendment claims. (*See* Docket Entry 18 at 11-14.) Because these documents contain information not referenced in the Complaint and because the Court considers this evidence in disposing of the motion to dismiss, Defendants' Motion should be converted into a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see Parker v. Torres*, No. 1:21-CV-173, 2022 WL 2982549, at *3 (M.D.N.C. Jul. 28, 2022) (unpublished) (construing motion to dismiss as 12(b) motion converted to motion for summary judgment where moving party relied on attached declaration and exhausted grievances which were not excluded by the court); *see also Corey v. Dennis*, No. 1:23-CV-440, 2024 WL 4132770, at *3 (M.D.N.C. Jun. 27, 2024), *recommendation adopted*, (M.D.N.C. Sep. 10, 2024) (recommending 12(b)(6) motion be converted to motion for summary judgment because defendants submitted evidence relating to plaintiff's use of prison grievance process that contained information not referenced in complaint and that was considered by court in disposing of motion).

When Rule 12(d) is triggered to convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56, "[a]ll parties must be given a reasonable opportunity to

---

[5] Defendants refer to this attachment as Exhibit C. Plaintiff did not attach documents to his Complaint. However, a filing entitled "Prisoner Admin Remedy Statement by Travus McCants" that was transferred from the Western District of North Carolina on May 28, 2024, contains what appears to be a faint copy of the March 2023 Greivance. (*Compare* Docket Entry 3 at 2-3 *with* Docket Entry 18-4 at 1-2.)

7

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (cleaned up).

The Court finds that Plaintiff had a reasonable opportunity to respond to Defendants' evidence submitted outside of the pleadings, "putting [Plaintiff] on notice of possible conversion." *Fornshill v. Ruddy*, No. 95-2490, 89 F.3d 828 (table), 1996 WL 333223, at *2 (4th Cir. 1996) (unpublished); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) ("Setting aside the caption for a moment, we note that the [D]efendant submitted affidavits and other materials with its motion…. Therefore by operation of the Federal Rules of Civil Procedure, [P]laintiff also should have been on notice that the [D]efendant's motion could be considered by the court to be a summary judgment motion.").

Additionally, Plaintiff was further put on notice by the *Roseboro* letter that advised him:

The Defendants filed a Motion to Dismiss on 12/12/2024, which may or may not be supported by an affidavit.

You have the right to file a 20-page response in opposition to the defendant's motion. *Therefore, your failure to respond or, if appropriate, to file counter affidavits or evidence in rebuttal within the allowed time may cause the court to conclude that the defendant's contentions are undisputed. Therefore, unless you file a response in opposition to the defendant's motion, it is likely your case will be dismissed, or summary judgment will be granted in favor of the defendants.* Any response or counter affidavits or other responsive material to a Motion to Dismiss must be filed within 21 days from the date of service of the defendant's motion upon you.

(Docket Entry 19 at 1 (emphasis added).) The text of the "*Roseboro* Letter" advised Plaintiff to respond with "affidavits or evidence in rebuttal," putting Plaintiff on notice that the Court could consider summary judgment, and that conversion is proper. *See Corey*, 2024 WL 4132770, at *3-4.

Further, "Plaintiff Stipulates that [Docket Entry 18-4], referencing the Plaintiff's grievance regarding the incident underlying his Section 1983 claims, may be considered by the Court in addressing the sufficiency of Plaintiff's allegations." (Docket Entry 32 at 7.) Plaintiff thus has had ample opportunity to submit additional documents or affidavits to show there were genuine issues of material fact remaining. *See Herbert v. Saffell*, 877 F.2d 267, 270 (4th Cir. 1989). Moreover, Plaintiff withdrew his Motion to Compel Discovery (Docket Entry 33), apparently indicating that he had no need for further discovery regarding the exhaustion issue, and Defendants have made no indication that they seek any additional discovery. *See Gay*, 761 F.2d at 177; *see also Meris v. Yarbrough*, No. 1:21-CV-167, 2022 WL 2869048, at *11 (M.D.N.C. Jul. 21, 2022), *recommendation adopted*, (M.D.N.C. Aug. 30, 2022) (conversion is proper when "neither side indicated a need for additional discovery regarding the exhaustion issue"). Thus, ultimately, Defendants Motion more properly constitutes a request for summary judgment than for Rule 12(b)(6) dismissal, and the Court will consider it as such. *See Meris*, 2022 WL 2869048, at *11.

### iv. <u>Rule 56</u>

Summary judgment motions require a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the movant's burden to establish that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). If the movant meets their burden, the burden shifts to the other party to produce "specific facts showing that there is a genuine issue for trial." *Ray Communications, Inc. v. Clear Channel communications, Inc.* 673 F.3d 294, 299 (4th Cir. 2012). "Any factual assertions in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (internal quotation marks omitted). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. These facts must show more than conclusory allegations, denials, or the "mere existence of a scintilla of evidence …; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 256. Factual allegations in a complaint or other court filings constitute evidence under Rule 56 standards when those allegations are sworn or made under penalty of perjury. Fed. R. Civ. P. Rule 56(e); *see also Meris*, 2022 WL 2869048, at *10.

### v. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that inmates exhaust all "administrative remedies as are available" before brining lawsuits challenging prison conditions. 42 U.S.C. § 1997e(a). This provision is mandatory, and courts do not have discretion to waive the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As an affirmative defense, the defendant

10

must establish that a prisoner failed to exhaust their administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Anderson v. XYZ Corr. Health Serv.*, 407 F.3d 674, 683.[6]

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91. The ARP is a three-step procedure made available by the NCDAC that governs the submission and review of inmate grievances in North Carolina (*see* Docket Entry 18-2). *Moore v. Bennette*, 517 F.3d 717, 721-22 (4th Cir. 2008). "North Carolina prisoners can satisfy the [PLRA's] exhaustion requirement by completing all three of the steps of the [ARP], which culminates in the rendering of a decision upon the prisoner's appeal by the North Carolina [IGRB]." *Harris v. Midford*, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) (unpublished). Use of the ARP refutes any potential excuse that an inmate was unable to exhaust his administrative remedies due to a lack of access or availability. *Moss v. Harwood*, 19 F.4th 614, 622-23 (4th Cir. 2021).

### b. **Defendants' Motion should be granted in part and denied in part.**

#### i. **Plaintiff's request for declaratory and injunctive relief is moot.**

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Head v. United States*, No. GJH-22-238, 2023 WL 2163177, at *2 (D. Md. Feb. 22, 2023) (unpublished) (holding that plaintiff's transfer to different facility rendered his claims for injunctive relief moot). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in

---

[6] Neither the PLRA nor NCDAC policies require a plaintiff to identify defendants by name in a grievance. *See Jones*, 549 U.S. at 219; NCDPS Policy & Procedures, Administrative Remedy Procedure, available at https://www.ncdps.gov/media/4268/download (last visited June 16, 2025).

11

which he [was] subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007).

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (internal quotation marks and citations omitted).

Here, Plaintiff was transferred out of SCI (where the alleged underlying constitutional violations took place) and has since been housed in Tabor Correctional Institution, Alexander Correctional Institution, Craven Correctional Institution, and Buncombe County Jail. (*See* Docket Entries 14, 18, 22, 26; *see also* Compl. at 2, 4.)[7] Thus, his claims for declaratory and injunctive relief are moot. Plaintiff has provided no indication that the complained-of conduct is continuing following his transfer from SCI. *Holbrook v. Aldridge*, No. 3:21-CV-00170, 2022 WL 4000718, at *14 (S.D.W. Va. Aug. 1, 2022) (unpublished), *report and recommendation adopted*, No. CV 3:21-0170, 2022 WL 3994721 (S.D.W. Va. Aug. 31, 2022). Nor are the claims here "capable of repetition, nor yet evading review[,]" since Plaintiff would have the opportunity to

---

[7] *See also* Text Order dated 2/25/2025 ("On two occasions, the Court [mailed letters to Plaintiff]. (Docket Entry 19.) However, [the letters were] returned undeliverable, apparently because Plaintiff was no longer at the updated addresses provided. (Docket Entries 21, 24.) In a recent motion filing, a new address was reflected for Plaintiff, which the Court has updated the docket. (Docket Entry 26.)").

12

re-initiate an action for injunctive relief if he were returned to SCI. *Tyler v. Poole*, No. 1:17-CV-1142, 2020 WL 758116, at *2 (unpublished) (citing *Rendelman*, 569 F.3d at 186). Therefore, Plaintiff's claims for declaratory and injunctive relief cannot survive and should be dismissed. *Id.*

### ii. Plaintiff's official-capacity claims should be dismissed.

Again, Defendants argue that the Complaint should be dismissed for two reasons. (Docket Entry 18 at 1.) First, they argue that Plaintiff's official-capacity claims against are precluded by the Eleventh Amendment. (*Id.*) Second, they argue that Plaintiff has failed to exhaust the administrative grievance process for his claims as required by the PLRA. In response to Defendants' Motion, Plaintiff abandons his official-capacity claims. (Docket Entry 32 at 16.) Thus, the undersigned recommends that Defendants' Motion should be granted as to Plaintiff's official-capacity claims against Defendants, and that said claims should be dismissed with prejudice. *Accord Bynum v. Kerr*, No. 19-11858, 2020 WL 7038607, at *1 (E.D. Mich. Aug. 17, 2020) (unpublished), *report and recommendation adopted*, No. 19-11858, 2020 WL 7024678 (E.D. Mich. Nov. 30, 2020) ("Because Plaintiff concedes [his claim, that claim] should be dismissed with prejudice.").

### iii. Defendants' Motion should be denied as to the argument that Plaintiff failed to exhaust his administrative remedies.

It is undisputed that the ARP was available to Plaintiff and that he understood it. (Docket Entry 18 at 11; Docket Entry 32 at 16.) It is also undisputed that because the March 2023 Grievance went through all three steps of the ARP, it satisfied the PLRA's exhaustion requirements. (Docket Entry 18-1 ¶ 4.ii.; Docket Entry 32 at 7-8.) At issue here is whether the March 2023 Grievance relates to incident alleged in the Complaint. Defendants argue that it does not. (Docket Entry 18 at 11-12.) They argue that the factual differences between the Complaint and the March 2023 Grievance make the latter insufficient to satisfy the PLRA's exhaustion

13

requirements. (*See id.* at 7-12.) They argue that the March 2023 Grievance relates primarily to a "sexual assault" in which Plaintiff was "forcefully stripped naked while officers [sic] grinded his penis against [Plaintiff's] buttocks." (*See* Docket Entry 18 at 11; Docket Entry 18-4 at 2.) They also argue that the March 2023 Grievance contains no reference to "the Complaint's central allegation that certain correction officers 'ran [Plaintiff's] face into the concrete walls repeatedly[.]'" (Docket Entry 18 at 11; Compl. ¶ 20.) Defendants offer no explanation or authority as to why said allegation should be considered "central" to the Complaint. (*See generally* Docket Entries 17, 18.) Defendants further argue that the March 2023 Grievance and Complaint refer to incidents which occurred on different dates, as Plaintiff listed the date of his Grievance as "3-21-2022[,]" while the date of the incident referred to in the Complaint occurred "on or about or around March 22, 2023." (Docket Entry 18-4 at 2, 5; Compl. ¶ 9.)

The undersigned disagrees, and finds that Plaintiff has no duty to file additional grievances. For the following reasons, the March 2023 Grievance gave Defendants "a fair opportunity to address the problem that [eventually] form[ed] the basis of the lawsuit[,]" *Moore*, 517 F.3d at 729, and thus constitutes a sufficient exhaustion of administrative remedies to defeat Defendants' attempt to use the affirmative defense of failure to exhaust, and that portion of Defendants' Motion should be denied. *See Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 683.

First, the Complaint alleges that the incident occurred at approximately 10:20 a.m. and the March 2023 Grievance alleges that it occurred "at 10 or 11 AM." (Docket Entry 18-4 at 5; Compl. ¶ 9.) Both filings alleged that Plaintiff was taken to a shower outside the view of cameras. (Docket Entry 18-4 at 3; Compl. ¶ 20.) Both filings also allege Defendants used Tasers and mace/pepper spray against Plaintiff. (Docket Entry 18-4 at 2; Compl. ¶¶ 13-18,

14

28.) Both filings allege that Plaintiff was struck repeatedly in the face and head by officers using excessive force, resulting in injuries including broken facial bones and PTSD. (Grievance at 2-3; Compl. ¶¶ 21-26.) In the Complaint, Plaintiff alleges deliberate indifference against the supervisory Defendants who allowed Plaintiff to be beaten; the March 2023 Grievance includes questions Plaintiff had regarding Defendants' lack of intervention to stop the alleged incident. (*See* Docket Entry 18-4 at 2; Compl. at 16.)

As to the apparent date discrepancy, Defendants' attachment of ARP Step Three of the March 2023 Grievance states, "[t]here is no incident involving this offender that could be identified on March 21. There is an incident from March 22. However, the amount of force used in that incident … was determined to be appropriate under policy." (Docket Entry 18-4 at 1.) Defendants received notice of Plaintiff's allegations of excessive force and deliberate indifference, investigated the allegations, and determined that "the grievance is dismissed as lacking any supporting evidence." (*Id.*) Thus, ultimately, none of the supposed discrepancies between the Complaint and the March 2023 Grievance are sufficient to dispute Plaintiff's grievance.

Defendants argue that "inmate grievances seeking relief for one set of facts do not satisfy the exhaustion requirement when the inmate's lawsuit seeks relief for a different set of facts— even when those facts arise from the same incident." (Docket Entry 18 at 9.) In arguing that Plaintiff's allegations were not exhausted through the ARP, Defendants cite three cases that purportedly support their argument: *Moore*, 517 F.3d 717; *Johnson v. Smith*, No. 1:21-CV-13, 2023 WL 1353668 (M.D.N.C. Jan. 31, 2023) (unpublished); and *Hicks v. Sadie*, No. 1:19-CV-115, 2022 WL 2952507 (M.D.N.C. July 26, 2022) (unpublished). (*Id.*) None of these cases is availing.

15

First, in *Moore*, the inmate Plaintiff brought, in pertinent part, a claim for deliberate indifference to his medical needs regarding his gout. *Moore*, 517 F.3d at 723. Defendants moved to dismiss this claim for failure to exhaust administrative remedies. *Id.* The Fourth Circuit affirmed the District Court's ruling that Plaintiff had failed to exhaust his administrative remedies regarding the gout claim because both applicable grievances were properly rejected. *Id.* The court reasoned that

> Moore's pancreatic condition and Hepatitis C grievances, although alleging a pattern of inadequate medical care, did not give prison officials a fair opportunity to address the alleged inadequate care he received for his gout. At the conclusion of the review of those grievances, prison officials determined that [the medical care provided to Moore] adequately addressed Moore's concerns about the treatment he was receiving for these conditions. Because the grievances did nothing to alert the officials that Moore had any additional condition that was not being treated adequately, they had no reason to investigate any further. Under these circumstances, allowing Moore to bring suit for alleged inadequate treatment of his gout would not serve the purposes behind the exhaustion requirement.

*Id.* at 729 (citation omitted). The court went on to find that Moore's grievance that contained complaints about a nurse's improper urine sample collection and a request that the grievance be considered as evidence of a pattern of inadequate medical care fueled by retaliatory motives was properly rejected as violating "the rule prohibiting a single grievance from being used to complain of two separate incidents." *Id.* The court found that a second gout-related grievance filed by plaintiff while his Hepatitis C grievance was still pending was also properly rejected because it failed to meet the criteria for an emergency grievance, and that Moore should have resubmitted any gout-related grievance upon resolution of the Hepatitis C grievance, but he failed to do so. *See id.* at 729-30.

Here, none of the facts or findings in *Moore* support Defendants' argument. The March 2023 grievance gave prison officials a fair opportunity to address the alleged Eighth-Amendment

16

violations. The fact that Plaintiff does not seek legal redress in the instant action for the alleged sexual battery does not change the fact that the March 2023 Grievance alerted prison officials adequate of his claims of being Tased, pepper-sprayed, handcuffed, and beaten badly enough to cause fractures in the bones in his face and PTSD, all for no apparent reason, in violation of his constitutional rights. Nor does the absence in the March 2023 Grievance of the detail about having his head run into a concrete wall change the fact that said grievance notified officials of his allegations that officers used excessive force on Plaintiff. Furthermore, unlike in *Moore*, the March 2023 Grievance was never rejected, had no procedural defects, and was fully exhausted by going through all three steps of the ARP. Defendants' attempt to rely on *Moore* thus fails.

Second, in *Johnson*, the inmate Plaintiff brought claims against detention officers relating to excessive use of force and deliberate indifference via inadequate medical care. *See generally* 2023 WL 1353668. In its review of the applicable administrative grievance procedure, the court found that although Plaintiff did file initial request forms ("IRF") regarding use of force, he failed to mention anything regarding medical care or lack thereof on the date in question, and concluded that the plaintiff failed to satisfy the administrative exhaustion requirement for the deliberate indifference claim because his IRFs and medical request forms failed to alert the prison to the nature of the wrong for which he sought redress through his medical deliberate indifference claim. *See id.* at *16 (citing *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017)). Thus, *Johnson* stands for the same essential legal standard as *Moore* and *Johnson* is distinguishable from the instant action, since Plaintiff mentioned both excessive force and deliberate indifference in the March 2023 Grievance and the Complaint. Accordingly, Defendants' attempt to rely on *Johnson* fails as well.

17

Third, in *Hicks*, the inmate Plaintiff also sued prison officials alleging excessive force and deliberate indifference. *See generally* 2022 WL 2952507. There, the court found that the grievance regarding deliberate indifference and excessive force Hicks filed adequately exhausted his claims relating thereto, but that said grievance was insufficient to exhaust his claims relating to his conditions of confinement. *See id.* at *18-19. In its reasoning, the court relied on the requirement set forth in *Moore* that a plaintiff exhausts his administrative remedies under the PLRA upon completing grievances that give prison officials a fair opportunity to address the alleged inadequate care he received. *Hicks*, 2022 WL 2952507, at *19 (citing *Moore*, 517 F.3d at 729). Thus, for the same reasons discussed above, *Hicks* offers no support for Defendants' argument, and their attempt to rely on it also fails.

Ultimately, since the March 2023 Grievance adequately put Defendants on notice of Plaintiff's excessive force and deliberate indifference claims, Plaintiff "has already given prison officials a fair opportunity to address the problem that [eventually] form[ed] the basis of [this] lawsuit." *Moore*, 517 F.3d at 529 (internal quotations omitted). Therefore, the undersigned finds that Plaintiff has sufficiently exhausted his administrative remedies as to all claims in the Complaint, and that Defendants' attempt to defeat said claims via the affirmative defense of failure to exhaust under the PLRA fails. Defendants' Motion provides no other basis upon which the claims against Defendants in their individual capacities should not proceed. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss, which the Court has converted to a Motion for Summary Judgment, should be denied as to Defendants' argument that Plaintiff failed to exhaust his administrative remedies.

18

### III. **CONCLUSION**

For the reasons state herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 17) should be converted to a Motion for Summary Judgment, which should be **GRANTED IN PART AND DENIED IN PART**. Specifically, said converted Motion should be **GRANTED** as to Plaintiff's abandoned claims against Defendants in their official capacities, and that those claims should be **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that said converted Motion should be **GRANTED** as to Plaintiff's request for declaratory and injunctive relief, and that those claims be **dismissed as moot**.

**IT IS FURTHER RECOMMENDED** that said converted Motion should be **DENIED** as to the argument that Plaintiff failed to exhaust his administrative remedies. Thus, the undersigned recommends that Plaintiff's Section 1983 claims against Defendants in their individual capacities **should not be dismissed**.[8]

                                                    /s/ Joe L. Webster
                                           United States Magistrate Judge

June 17, 2025
Durham, North Carolina

---

[8] In light of the recommendation herein, and to the extent adopted, Defendants should be required to file Answers to Plaintiff's Complaint and this matter should proceed into discovery. Then at the appropriate time, Defendants should be permitted to file a new dispositive motion addressing the merits of Plaintiff's claims. *See Lindensmith v. Jerome*, No. CIV.A. 10-13530, 2011 WL 3796722, at *4 (E.D. Mich. Aug. 4, 2011) (unpublished) (recommending that defendants' motion for summary judgment of *pro se* prisoner's Section 1983 claim be denied as to argument that plaintiff failed to exhaust administrative remedies and recommending that defendants should either file new dispositive motion or answers to complaint), *report and recommendation adopted*, No. 10-CV-13530, 2011 WL 3756672 (E.D. Mich. Aug. 25, 2011).